# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STUART WOLLMAN, on behalf of himself and
all other similarly situated stockholders of
Hospitality Investors Trust, Inc.,

                                        Plaintiffs,

        -against-

HOSPITALITY INVESTORS TRUST, INC.; AR                    Case No. 20-CV-00798 (VEC)
GLOBAL INVESTMENTS, LLC; AMERICAN
REALTY CAPITAL HOSPITALITY
PROPERTIES, LLC; AMERICAN REALTY
CAPITAL HOSPITALITY ADVISORS, LLC;
NICHOLAS S. SCHORSCH; WILLIAM M.
KAHANE; EDWARD M. WEIL, JR.; PETER M.
BUDKO; BRIAN S. BLOCK; JONATHAN P.
MEHLMAN; STANLEY R. PERLA; ABBY M.
WENZEL; and ROBERT H. BURNS

                                        Defendants.

---

## AR PARTIES' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS AND JOINDER IN DEFENDANT
## HOSPITALITY INVESTORS TRUST, INC.'S MOTION TO DISMISS

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000

Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
212-506-3955

*Counsel for AR Parties*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    I.    THE CLAIMS AGAINST THE AR PARTIES ARE ALL DERIVATIVE, NOT DIRECT. ............................................................................................ 4

    II.    PLAINTIFF DOES NOT COME CLOSE TO ADEQUATELY ALLEGING FRAUD AGAINST ANY AR PARTY. ........................................... 9

    III.    AMENDMENT WOULD BE FUTILE. ................................................................ 14

CONCLUSION ................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AHW Inv. P'ship* v. *Citigroup, Inc.*,
   806 F.3d 695 (2d Cir. 2015)..................................................................................5

*Baltus-Michaelson* v. *Credit Suisse First Bos., LLC*,
   116 F. App'x 308 (2d Cir. 2004) ..........................................................................5

*Bauman* v. *Mount Sinai Hosp.*,
   452 F. Supp. 2d 490 (S.D.N.Y. 2006)..............................................................12, 13

*In re Bear Stearns Cos. Securities Deriv. & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014).................................................................10

*Continental Group* v. *Justice*,
   536 F. Supp. 658 (D. Del. 1982)...........................................................................8

*Diehl* v. *Omega Protein Corp.*,
   339 F. Supp. 3d 153 (S.D.N.Y. 2018).................................................................12

*DiVittorio* v. *Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987)..............................................................................14

*Feldman* v. *Cutaia*,
   951 A.2d 727 (Del. 2008) .....................................................................................5

*Garber* v. *Legg Mason, Inc.*,
   537 F. Supp. 2d 597 (S.D.N.Y. 2008).................................................................14

*Glaser* v. *The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................3

*Hauptman* v. *Interactive Brokers, LLC*,
   349 F. Supp. 3d 292 (S.D.N.Y. 2018).................................................................14

*Meridian Horizon Fund, LP* v. *Tremont Group Holdings, Inc.*,
   747 F. Supp. 2d 406 (S.D.N.Y. 2010), *aff'd sub nom. Meridian Horizon Fund,*
   *LP* v. *KPMG (Cayman)*, 487 F. App'x 636 (2d Cir. 2012) ...............................12

*Milliken* v. *Am. Realty Capital Hosp. Advisors, LLC et al.*,
   No. 1:18-cv-01757-VEC (S.D.N.Y.), ECF No. 127-1...........................................9

*Mona* v. *Mona Elec. Grp., Inc.*,
   934 A.2d 450 (Md. Ct. Spec. App. 2007) ..........................................................7, 8

*Oliveira* v. *Sugarman*,
  152 A.3d 728 (Md. 2017) ...................................................................................6

*Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*,
  173 A.D.2d 203 (1st Dep't 1991) .....................................................................10

*Pehlivanian* v. *China Gerui Advanced Materials Grp., Ltd.*,
  No. 14 CIV. 9443 (ER), 2017 WL 1192888 (S.D.N.Y. Mar. 29, 2017)...................14

*Schuster* v. *Gardner*,
  25 Cal. Rptr. 3d 468 (Cal. Ct. App. 2005) ..........................................................8

*Shapolsky* v. *Shapolsky*,
  279 N.Y.S.2d 747 (N.Y. Sup. Ct. 1966), *aff'd,* 28 A.D.2d 513 (1st Dep't
  1967) .............................................................................................................5

*Shenker* v. *Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ...............................................................................5, 6

*Strougo on Behalf of Brazil Fund, Inc.* v. *Padegs*,
  1 F. Supp. 2d 276 (S.D.N.Y. 1998) ....................................................................3

*Strougo* v. *Bassini*,
  282 F.3d 162 (2d Cir. 2002).............................................................................6

*Sutton* v. *FedFirst Fin. Corp.*,
  126 A.3d 765 (Md. Ct. Spec. App. 2015) ...........................................................7

*Take-Two Interactive Software, Inc.* v. *Brant*,
  No. 06CIV05279LTS, 2010 WL 1257351 (S.D.N.Y. 2010)......................................3

*Techno-Comp, Inc.* v. *Arcabascio*,
  130 F. Supp. 3d 734 (E.D.N.Y. 2015) ...............................................................10

*Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ...............................................................................5

*Twohy* v. *First Nat. Bank of Chicago*,
  758 F.2d 1185 (7th Cir. 1985) ...........................................................................5

*Union Cent. Life Ins. Co.* v. *Credit Suisse Sec. (USA), LLC*,
  No. 11 CIV. 2327 GBD, 2014 WL 7179989 (S.D.N.Y. Dec. 10, 2014) .................15

*Wall* v. *CSX Transportation, Inc.*,
  471 F.3d 410 (2d Cir. 2006)..............................................................................5

*Waller* v. *Waller*,
  49 A.2d 449 (Md. 1946) ...................................................................................6

*Xerion Partners, I LLC* v. *Resurgence Asset Mgmt., LLC*,
    474 F. Supp. 2d 505 (S.D.N.Y. 2007).........................................................................................14

**OTHER AUTHORITIES**

Bruce Kelly, "Massachusetts Regulator Galvin Investigating Schorsch B-D,"
    Investment News (Nov. 19, 2014) ............................................................................................11

Fed. R. Civ. P. 9(b) ...........................................................................................................9, 10, 12

Defendants AR Global Investments, LLC ("AR Global"), American Realty Capital Hospitality Properties, LLC (the "Property Manager"), American Realty Capital Hospitality Advisors, LLC (the "Advisor"), Nicholas S. Schorsch, William M. Kahane, Edward M. Weil, Jr., Peter M. Budko, and Brian S. Block (collectively, the "AR Parties"), respectfully submit this memorandum of law in support of the AR Parties' motion to dismiss the Complaint (ECF No. 1). The AR Parties respectfully join in full the memorandum of law being filed by Hospitality Investors Trust, Inc. ("HIT" or the "Company"), and submit this memorandum to address additional reasons why the claims against them should be dismissed with prejudice.

## PRELIMINARY STATEMENT

Through this action, Plaintiff, a purported HIT shareholder, is attempting to recast paradigmatic derivative claims *on behalf of* the Company as a direct fraud class action claim *against* the Company. Even more tenuous, however, is Plaintiff's attempt directly to assert his mislabeled fraud claim against *the AR Parties*, who served as third-party service providers to HIT, or are an affiliate of the parent company of those third-party service providers and the principals of that affiliate. Plaintiff's attempt to recast his derivative claims as direct is unavailing, and does not remotely state a claim in any event.

Indeed, Plaintiff's claim is particularly weak with respect to the AR Parties, and dismissal is appropriate for both the reasons explained in the Company's memorandum of law, as well as those set forth below:

*First*, Plaintiff's claim against the AR Parties is indisputably a derivative claim on behalf of the Company, not a direct claim on behalf of the Company's stockholders. The Complaint alleges that certain AR Parties were service providers to the Company, and challenges certain payments made to them by the Company. That constitutes a derivative claim belonging to the Company, with whom the AR service providers had a contract, not a direct claim belonging to

its stockholders.  Indeed, no AR Party is alleged to have had any direct relationship with Plaintiff (or any other stockholder), and the only injury (if any) Plaintiff claims to have suffered at the hands of the AR Parties is his pro rata share of any contractual overpayment by the Company to an AR Party, which Plaintiff only could have borne indirectly.  The Complaint should be dismissed with prejudice on this threshold basis.

*Second*, even if Plaintiff's lone fraud claim was not barred by this foundational principle of law, his Complaint utterly fails to allege the "who, what, when, where, and how" that must be found in any well-pleaded fraud complaint.  Plaintiff does not allege a single fact with particularity against any of the AR Parties (most of whom are scarcely mentioned in the Complaint), and does not come close to adequately alleging their participation in a purported scheme to defraud HIT investors.  To the extent Plaintiff could pursue a direct fraud claim (and he cannot), it should be dismissed with prejudice as to the AR Parties for failure to state a claim.

## STATEMENT OF FACTS

The AR Parties adopt the statement of facts contained in the Company's memorandum of law and offer the following additional facts relevant to the additional arguments contained herein.

There are eight AR Parties in this case that fall into three distinct categories:

**The Third-Party Service Providers**.  Two Defendants—the Property Manager and the Advisor—were third-party service providers to the Company.  On December 6, 2013, the Property Manager entered into a Property Management Agreement with the Company to manage the hotel properties owned and acquired by the Company.  Compl. ¶ 23.  On January 7, 2014, the Advisor entered into a separate Advisory Agreement with the Company to provide investment and financial advisory services.  (Report of the Special Litigation Committee of the Board of Directors

of Hospitality Investors Trust, Inc. ("SLC Report") at 47 (dated Oct. 11, 2019).)[1]  Both contracts

were terminated in 2017 when the Company internalized those operations.  *Id.* at 81–82.

**An Affiliate of the Parent Company of the Third-Party Service Providers.**

Defendant AR Global is an affiliate of AR Capital, LLC ("AR Capital"), which is the parent of the

third-party service providers.  The Complaint includes numerous references to "Defendant AR

Capital," but does not actually name AR Capital as a Defendant.  *See* Compl. ¶¶ 9–15, 33, 65, 67,

68.  To the extent Plaintiff intended to name AR Capital as a Defendant, AR Capital would be

situated similarly as AR Global for the purpose of this memorandum of law.

**The Affiliate's Principals.**  Defendants Schorsch, Kahane, Budko, Weil, and

Block are principals of AR Global.  Mr. Kahane is the only AR Party Individual Defendant who

served as a HIT officer or employee during the relevant time period.[2]  In particular, Mr. Kahane

served as HIT's CEO from August 2013 to December 2014, and on HIT's Board of Directors from

December 2014 through March 2017.  (SLC Report at 9, 45.)  Critically, Mr. Kahane did not cast

---

[1]   The SLC Report is attached to the Company's memorandum of law as Doyle Decl. Ex. 1.  The
      AR Parties disagree with a number of the factual findings and conclusions of the SLC Report,
      but the SLC Report nonetheless does not support the fraud claim advanced in this case.  The
      Court is permitted, at the motion-to-dismiss stage, to consider the SLC Report of HIT's Special
      Litigation Committee.  *See, e.g.*, *Take-Two Interactive Software, Inc.* v. *Brant*, No.
      06CIV05279LTS, 2010 WL 1257351, at *3 (S.D.N.Y. 2010) (considering an SLC report at
      the motion to dismiss stage where the amended complaint "specifically incorporate[ed] [the
      report] by reference . . . ."); *Strougo on Behalf of Brazil Fund, Inc.* v. *Padegs*, 1 F. Supp. 2d
      276, 279 (S.D.N.Y. 1998) (considering interview memoranda included as exhibits in an SLC
      Report when considering defendant's motion to dismiss).  On a motion to dismiss, the Court
      "may also properly consider documents referenced in or integral to the complaint, as well as
      public filings with the SEC."  *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 585 (S.D.N.Y. 2011).

[2]   Mr. Schorsch served on HIT's Board of Directors from July 2013 to December 2014, but has
      had no role as a HIT director, officer or employee since that time.  (SLC Report at 44.)  Thus,
      Mr. Schorsch left his role at HIT approximately four months before the very first challenged
      disclosure.  None of the other AR Party Individual Defendants (apart from Kahane and
      Schorsch) are alleged to have held any positions with HIT, or otherwise managed HIT's
      business.

any votes on any of the transactions at issue in the Complaint; all Board votes concerning transactions with an AR entity were decided by the independent directors.  (*Id.* at 51–53.)

The Complaint alleges several disclosure theories, only two of which pertain to the AR Parties.  *First*, the Complaint alleges that the Company misrepresented that the property management fee paid to the Property Manager was actually an undisclosed "commission" paid to RCS.  Compl. ¶¶ 3, 34.  The statement at issue was contained in the 2015 Offering Prospectus, which was not signed by any of the AR Party Individual Defendants, including Mr. Kahane (who was no longer CEO, and was a director at that time).  *Second*, the Complaint alleges the Company failed to disclose an investigation into its dealer-manager, RCS, by the Securities Division of the Massachusetts Secretary of State.  Compl. ¶ 4.  To the contrary, the investigation was publicly reported, and the lawsuit *was* disclosed by the Company mere days after the complaint against RCS was brought by the Massachusetts Secretary of State.[3]

## ARGUMENT

The AR Parties adopt the legal arguments set forth in the Company's memorandum of law, and address additional reasons that Plaintiff's claim against the AR Parties is particularly infirm and dismissal of any claim against them with prejudice is particularly warranted.

## I.  THE CLAIMS AGAINST THE AR PARTIES ARE ALL DERIVATIVE, NOT DIRECT.

Plaintiff's single cause of action for fraud should be dismissed as to all Defendants, and in particular the AR Parties, because despite Plaintiff's false label, the claim is indisputably a derivative claim on behalf of the Company, not a direct claim by stockholders.

---

[3]  With respect to any other purportedly fraudulent acts or statements, including any relating to the Company's NAV, the allegations are not connected to the AR Parties in particular, and the AR Parties incorporate the Company's memorandum of law.

Plaintiff's mislabeling of his claim disregards the "well-settled" principle of corporate law that stockholders have no personal, direct right of action for purported harms that befall them indirectly—on a proportional and *pro rata* basis—based upon purported harm to the company itself. *See Baltus-Michaelson* v. *Credit Suisse First Bos., LLC*, 116 F. App'x 308, 309 (2d Cir. 2004); *see also Feldman* v. *Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature."). It is also well established that shareholders cannot bring direct claims against third parties for injury to the corporation. *See Twohy* v. *First Nat. Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985) (under "general principles of United States corporate law," stockholders have "no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation"); *Shapolsky* v. *Shapolsky*, 279 N.Y.S.2d 747, 750 (N.Y. Sup. Ct. 1966), *aff'd*, 28 A.D.2d 513 (1st Dep't 1967) ("It is settled that a stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporations, for a wrong to the corporation.").

Under applicable Maryland law,[4] whether a claim is direct or derivative "must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail."[5] *Shenker* v. *Laureate Educ., Inc.*, 983 A.2d 408, 425 (Md. 2009)

---

[4]   In diversity cases, "federal courts look to the laws of the forum state in deciding issues regarding conflicts of law." *Wall* v. *CSX Transportation, Inc.*, 471 F.3d 410, 415 (2d Cir. 2006). Under New York law, "the law of the state of incorporation [applies] when adjudicating whether a claim is direct or derivative." *AHW Inv. P'ship* v. *Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015). HIT is incorporated in Maryland, Compl. ¶ 7, and Maryland's law applies.

[5]   *Accord Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (under Delaware law, whether a claim should be brought derivatively or directly turns on considerations of "(1) who suffered the alleged harm (the corporation or the suing

(internal quotation marks and citation omitted).  A plaintiff asserting a direct claim must have suffered a "distinct injury" separate from any harm suffered by the corporation, *id.* at 424, and "[t]he remedy that a shareholder seeks must benefit the shareholder as an individual, not the corporate entity," *Oliveira* v. *Sugarman*, 152 A.3d 728, 742 (Md. 2017) (internal citation omitted). Even though "harm to shareholders may flow from injuries to a corporation's business or property," "Maryland law nonetheless provides that in such circumstances, despite the harm to shareholders, the corporation alone has a cause of action to recover for the injury asserted." *Strougo* v. *Bassini*, 282 F.3d 162, 170–71 (2d Cir. 2002).

Because Plaintiff's claims are derivative in nature and not direct, the Court should dismiss his suit for lack of standing.  *See generally Bassini*, 282 F.3d at 171 ("When the corporation is injured and the injury to its shareholders derives from that injury, however, only the corporation may bring suit; there is no shareholder standing."); *Shenker*, 983 A.2d at 422 ("Ordinarily, a shareholder does not have standing to sue to redress an injury to the corporation resulting from directorial mismanagement."); *Waller* v. *Waller*, 49 A.2d 449, 452 (Md. 1946) ("[A] stockholder cannot sue individually to recover damages for injuries to the corporation, notwithstanding that the directors may have entered into an unlawful conspiracy for the specific purpose of ruining the corporation.").

The *only* AR-related allegation in the Complaint (which barely mentions the AR Parties) focuses on the Property Manager (one of the Company's third-party service providers). The Complaint alleges the existence of a "scheme to sweep 1–2% of gross revenues from the hotels owned by the Company to [the Property Manager], which was controlled and indirectly owned by

stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)").

AR Capital, as a property management fee."  Compl. ¶ 2.  The Complaint further alleges that the Property Manager was "unqualified to perform the activities that it had agreed to perform under the agreement," and the fees that were paid to the Property Manager were an alleged "'deal term' designed to surreptitiously provide additional revenue to AR Capital."  *Id.* at ¶¶ 32–33.  Not only are these allegations conclusory and unsupported by the SLC Report (on which Plaintiff relies), but the allegations demonstrate that Plaintiff alleges only harm to the Company, instead of its stockholders, because the crux of his claim against the Property Manager is that the Property Manager overcharged the Company for its contracted-for services.

This (meritless) claim that the Property Manager was overpaid by the Company is a quintessential derivative claim.  *See, e.g.*, *Sutton* v. *FedFirst Fin. Corp.*, 126 A.3d 765, 783 (Md. Ct. Spec. App. 2015) ("It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, *though the injury may incidentally result in diminishing or destroying the value of the stock*.") (internal quotation marks and citation omitted) (emphasis added).

In *Mona* v. *Mona Elec. Grp., Inc.*, 934 A.2d 450 (Md. Ct. Spec. App. 2007), for example, the court affirmed the trial court's decision dismissing a minority shareholder's  breach of fiduciary duty claim against the majority shareholder because his claim should have been brought as a derivative action, not a direct action.  There, the minority shareholder alleged that the majority shareholder enjoyed "excessive executive compensation and reimbursements for personal activities," and that the majority shareholder "orchestrated the Board's approval of his own grossly inflated compensation package."  *Id.* at 461.  The court properly dismissed the claim, ruling that "[a]ny wrongful overpayment by the company of compensation to an officer is at most a loss to

the company," and the shareholder had failed to demonstrate that "the injury for which he sought damages—the alleged overpayment of compensation to [the majority shareholder] by the company—was personal to him," rather than a claim belonging to the company generally. *Id.* at 469–70.

Similar to the minority shareholder in *Mona*, the only injury Plaintiff purports to identify arising from any purported misconduct of any nature by any AR Party—the alleged overpayment to the Property Manager by the Company—belongs to the Company, not to Plaintiff or any other HIT stockholder individually.   Plaintiff alleges that the Property Manager was excessively compensated, Compl. ¶¶ 2, 32–33, but the only purported harm he can identify to himself in his capacity as a HIT stockholder is the depreciation of the value of his HIT shares, Compl. ¶¶ 24, 52.[6]   As in *Mona*, Plaintiff alleges no injury to himself that is separate and distinct from the alleged injury to the Company.   Under black letter law, Plaintiff cannot recover directly for an injury that, "if it was sustained at all, was sustained by [the Company], not by [its shareholders]." *Mona*, 934 A.2d at 469.   Indeed, Plaintiff's claim is even *weaker* than the claims rejected by the court in *Mona*, because Plaintiff seeks to assert a claim against third-party service providers to the Company, as well as an affiliate of the parent company of those service providers, and the principals of that affiliate, with whom he has no privity. *See Continental Group* v. *Justice*, 536 F. Supp. 658, 660 (D. Del. 1982) ("A shareholder has no personal or individual right of action against a third party for acts causing injury to a corporation.").

---

[6]   *See also Schuster* v. *Gardner*, 25 Cal. Rptr. 3d 468, 476 (Cal. Ct. App. 2005) (applying Delaware law and concluding that a purported direct claim was actually derivative because the "alleged harms were to the corporation, and the harm to the shareholders, dilution in stock value, was incidental thereto and common to all shareholders").

Not only are Plaintiff's claims against the AR Parties inherently derivative, they are *indistinguishable* from the very same derivative claims asserted by HIT shareholder Tom Milliken, which are the subject of a proposed settlement agreement.  *See* Stipulation and Agreement of Settlement, Compromise, and Release, *Milliken* v. *Am. Realty Capital Hosp. Advisors, LLC et al.*, No. 1:18-cv-01757-VEC (S.D.N.Y.), ECF No. 127-1.  Milliken brought derivative claims challenging, in part, allegedly excessive fees paid to the Property Manager under the property management agreements.  *See* Verified Amended Shareholder Derivative Complaint at ¶¶ 177, 206, *Milliken*, ECF No. 65.  Thus, Plaintiff's allegations against the AR Parties are not merely derivative on their face, but are lifted from derivative claims in Milliken's parallel derivative action (the settlement of which Plaintiff plainly hopes to somehow disrupt through this misguided action).[7]

## II.  PLAINTIFF DOES NOT COME CLOSE TO ADEQUATELY ALLEGING FRAUD AGAINST ANY AR PARTY.

The Complaint also does not come close to pleading fraud with particularity with respect to the AR Parties, which is unsurprising given the very limited references in the Complaint to any purported conduct by the AR Parties.  Rule 9(b) makes clear that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

---

[7]  *Compare Milliken*, ECF No. 65, at ¶¶ 143, 146 ("These [property management] arrangements required HIT to pay a base management fee substantially above the range of competitive rates . . . AR Capital and its members intended that HIT's agreements with the Property Managers would provide an additional level of fees to enrich the Property Managers and thereby AR Capital and its members, which they did.") *with* Compl. ¶ 2 ("In connection with the Offering, Defendants engineered a scheme to sweep 1–2% of gross revenues from the hotels owned by the Company to American Realty Capital Hospitality Properties, LLC ('AR Hospitality'), which was controlled and indirectly owned by AR Capital, as a property management fee. However, AR Hospitality was doing nothing at all to earn those fees, and could not have performed the tasks with which it was charged, because AR Hospitality lacked the necessary personnel to perform the property management function for the hotels owned by HIT.  Instead, the fees paid to AR Hospitality were viewed as a 'deal term' in favor of AR Capital.").

Fed. R. Civ. P. 9(b). Failure to do so, as here, is clear grounds for dismissal. *See, e.g.*, *In re Bear Stearns Cos. Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 313–15 (S.D.N.Y. 2014) (dismissing New York common law fraud claim for failure to plead all elements with adequate particularity under Rule 9(b)). Plaintiff's claim should be dismissed because it does not satisfy the heightened pleading requirements of Rule 9(b).

In addition to the defects identified in the Company's memorandum of law, Plaintiff's claim against the AR Parties is particularly deficient, and dismissal is particularly warranted, for three reasons:

*First*, Plaintiff does not and cannot allege that the AR Parties made *any* fraudulent AR-related statements to the Company's shareholders, nor that they had any duty to make any statements whatsoever. Under New York law, a fraud claim can only be brought if a defendant makes a statement that contains a misrepresentation. *See Techno-Comp, Inc.* v. *Arcabascio*, 130 F. Supp. 3d 734, 741–42 (E.D.N.Y. 2015) (applying New York law and dismissing a fraud claim because the complaint did not include any factual allegations of any specific statement or representation made by defendant, let alone any false or misleading statements); *see also Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, 173 A.D.2d 203, 204 (1st Dep't 1991) (dismissing fraud counterclaim because the plaintiff "never made any affirmative misrepresentations nor was there a duty to speak"). Here, none of the AR-related Company disclosures challenged by Plaintiff were made, or even signed, by any AR Party.[8] Plaintiff, as a HIT shareholder, thus was not possibly defrauded by an AR Party.

---

[8]  In fact, the only document purportedly containing a misstatement that was signed by any AR Party is the Form 10-K for 2016, which was signed by Kahane in his capacity as a HIT Director, but this document does not contain any alleged misstatements about either the property management fees or the RCS investigation—which are the only alleged AR-related misstatements.

*Second*, to the extent that statements were made by HIT or HIT-affiliated Defendants about the Company's contracts with certain AR Parties, nothing in the Complaint suggests that any of those statements were false.[9]  The January 10, 2014 and April 30, 2015 prospectuses contained repeated and extensive disclosures about the precise payments that Plaintiff now mischaracterizes as a purported "scheme."  Shareholders were expressly told, in particular, that the Property Manager received a 4% fee, and that a portion of that fee was paid to sub-contractors who managed the hotels.  *See* 2015 Prospectus at 19 ("We pay a property management fee of up to 4.0% of the monthly gross receipts from the properties to our property manager.  Our property manager in turn pays a portion of the property management fees to our sub-property manager or a third-party sub-property manager, as applicable.").  In addition, the Company disclosed that:

- The Property Manager had "no prior operating history," was an "affiliate" of the Advisor, and would receive "fees, distributions and other compensation during the offering, acquisition, operational and liquidation stages," 2014 Prospectus at 4, 12, F-26;

- HIT would "enter into agreements with [its] property manager, which will, in turn, engage [its] affiliated sub-property manager to manage certain of [its] hotel properties," and that "[the] property manager will engage third-party sub-property managers in the ordinary course of business to operate certain hotel brands, as necessary," *id.* at 104;

---

[9]  Plaintiff's allegation that HIT committed fraud by failing to disclose the RCS investigation does not hold water.  It is clear that the Massachusetts Securities Division's investigation into RCS had been publicly reported *nearly one year before* the Offering and Plaintiff's purchase of Company stock.  *See, e.g.*, Bruce Kelly, "Massachusetts Regulator Galvin Investigating Schorsch B-D," Investment News (Nov. 19, 2014).  Neither HIT—nor its third-party service providers—had any obligation to disclose an ongoing investigation into a separate company. And, in any case, as Plaintiff himself admits, the Company *did* take immediate action once the Massachusetts Securities Division filed its complaint.  Three days after the complaint was filed, the Board met and decided to suspend the Offering.  Compl. ¶ 41.  Two days after that meeting, the Company publicly disclosed, in a supplement to the prospectus, the complaint and subsequent Board decision.  *Id.*

- AR Hospitality had entered into "property management and leasing agreements with [its] property manager with respect to the properties we acquire" and that the Property Manager "has entered into sub-property management agreements with [the] sub-property manager and third-party sub-property managers," 2014 Prospectus at 113; 2015 Prospectus at 119.

The property management fee paid by HIT to the Property Manager was thus transparently disclosed, and complete and accurate disclosures are not actionable.  *See, e.g.*, *Diehl* v. *Omega Protein Corp.*, 339 F. Supp. 3d 153, 163–64 (S.D.N.Y. 2018) (granting motion to dismiss in securities class action based, in part, on the completeness and accuracy of defendants' disclosures); *see also Meridian Horizon Fund, LP* v. *Tremont Group Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010), *aff'd sub nom. Meridian Horizon Fund, LP* v. *KPMG (Cayman)*, 487 F. App'x 636, 641 n.3 (2d Cir. 2012) (stating that the elements of common law fraud in New York are "essentially the same" as under federal securities laws).

*Third*, with respect to *all* of the AR Parties, the Complaint wholly fails to satisfy the requirement that a well-pled complaint of fraud contains "the who, what, when, where and how of the alleged fraud." *Bauman* v. *Mount Sinai Hosp.*, 452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006) (granting defendants' motion to dismiss as to RICO and fraud claims based, in part, on deficient pleading) (internal quotation marks and citation omitted).  Plaintiff does nothing to distinguish between the various Defendants, which include not only the Company and its board, but its third-party service providers, an affiliate of the parent company of those service providers, and the principals of that affiliate.  Without any allegations in support, Plaintiff has alleged a fraud claim against persons and entities (some of whom have absolutely no involvement in any of the underlying disclosures or transactions) solely by virtue of corporate association.  This deficient manner of pleading cannot satisfy Rule 9(b).

In particular, the Complaint is bereft of any allegations of fraudulent conduct (or, for that matter, any conduct whatsoever) on the part of Defendants AR Global, the Advisor, Weil,

Budko, and Block. AR Global is mentioned only three times throughout the entire Complaint—in these fleeting references, Plaintiff does nothing more than describe AR Global as a Defendant, Compl. ¶ 8; allege that AR Global agreed to settle litigation relating to an accounting scandal, *id.* at ¶ 37; and list a failed transaction in which Apollo would have acquired an interest in AR Global, *id.* at ¶ 40. The Advisor is only mentioned when it is described as a Defendant and in the descriptions of the ownership interests of other Defendants. *Id.* at ¶¶ 10, 13–16, 66, 68. And Defendants Weil, Budko, and Block are barely mentioned. *See id.* at ¶ 8 (describing them as Defendants); *id.* at ¶¶ 13–15 (alleging that they owned an interest in non-party AR Capital); *id.* at ¶ 37 (reference to an unrelated issue involving Block); and *id.* at ¶ 68 (conclusory allegation that they somehow knew of the "scheme" due to their "close working relationship with Defendants Schorsch and Kahane" and positions as principals or executives at "multiple AR Capital entities"). The Complaint is devoid of any allegation that any of these AR Parties knew about or were otherwise involved in any allegedly fraudulent statement.

Plaintiff's sparse and conclusory allegations against Defendants Schorsch, Kahane, and the Property Manager fare no better, and do not come close to adequately alleging the "who, what, when, where and how of the alleged fraud." *Bauman*, 452 F. Supp. 2d at 503. The Complaint alleges in conclusory fashion that Messrs. Schorsch and Kahane somehow "engineered" a scheme to provide additional revenue to AR Capital, but includes no well-pleaded allegations to support this charge. Compl. ¶ 33. Nor could it. Plaintiff's charge that Schorsch somehow "engineered" this alleged scheme makes no sense since he had no executive role at the Company approximately four months before the first alleged misrepresentation. *Id.* Plaintiff's charge that Kahane "conceived of and implemented the underlying scheme" is likewise incoherent given that Plaintiff

does not and cannot allege that he voted on any of the property management agreements in question or made or signed any of the purportedly fraudulent AR-related statements. *Id.* at ¶ 67.

Conclusory allegations of this nature fail to satisfy the pleadings standards required for allegations of fraud. *See, e.g.*, *Pehlivanian* v. *China Gerui Advanced Materials Grp., Ltd.*, No. 14 CIV. 9443 (ER), 2017 WL 1192888, at *8 (S.D.N.Y. Mar. 29, 2017) (granting motion to dismiss in securities class action based, in part, on deficient pleading); *Garber* v. *Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) (same); *Xerion Partners, I LLC* v. *Resurgence Asset Mgmt., LLC*, 474 F. Supp. 2d 505 (S.D.N.Y. 2007) (same). Plaintiff cannot stave off dismissal, or adequately allege fraud with particularity, through cursory references to the mere existence of a defendant's affiliate company, and the principals of that affiliate company. *See, e.g.*, *DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248–49 (2d Cir. 1987) (allegations that certain defendants were an affiliate and subsidiary of a corporate entity that published an allegedly fraudulent offering memorandum were insufficient to charge them with liability for misrepresentations in that document). For all of these reasons, dismissal of the claim against the AR Parties with prejudice for failure to state a claim is particularly appropriate and warranted.

## III.   AMENDMENT WOULD BE FUTILE.

The Court should dismiss the Complaint with prejudice because no amendment could cure the fatal defects in Plaintiff's claim against the AR Parties. Plaintiff cannot cure his failure to plead fraud with particularity, and in any event there is no set of facts that he could allege that might allow him to assert direct claims against the AR Parties based on harm to the Company rather than to himself in his capacity as a HIT stockholder. Because amendment would be futile, this Court should dismiss the action without leave to replead. *See, e.g.*, *Hauptman* v. *Interactive Brokers, LLC*, 349 F. Supp. 3d 292, 298 (S.D.N.Y. 2018) ("Because none of the claims in the [potential amended complaint] would survive a motion to dismiss, leave to amend would be

futile."); *Union Cent. Life Ins. Co.* v. *Credit Suisse Sec. (USA), LLC*, No. 11 CIV. 2327 GBD, 2014 WL 7179989, at *6 (S.D.N.Y. Dec. 10, 2014) ("Plaintiffs have provided this Court with no reason to believe that they can replead, in good faith, the factual allegations necessary to survive a motion to dismiss.").

## <u>CONCLUSION</u>

For the foregoing reasons and those asserted in the Company's memorandum of law, the Court should dismiss the Complaint as to the AR Parties in its entirety with prejudice.

Dated: March 18, 2020

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

/s/ Audra J. Soloway

Audra J. Soloway
Michael J. Pernick
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000 (tel.)
212-757-3990 (fax)
asoloway@paulweiss.com
mpernick@paulweiss.com

Daniel A. Mason (*pro hac vice* pending)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
500 Delaware Avenue, Suite 200
Wilmington, DE 19899
302-655-4410 (tel.)
302-655-4420 (fax)
dmason@paulweiss.com

*Attorneys for Defendants AR Global Investments, LLC; American Realty Capital Hospitality Properties, LLC; American Realty Capital Hospitality Advisors, LLC; Nicholas S. Schorsch; William M. Kahane; Edward M. Weil, Jr.; and Peter M. Budko*

STEPTOE & JOHNSON LLP

Michael C. Miller
Michael G. Scavelli
Khristoph A. Becker
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
212-506-3955 (tel.)
mmiller@steptoe.com
mscavelli@steptoe.com

*Attorneys for Defendant Brian S. Block*